Appellant, Bruce Edward Chenoweth appeals from the judgment of the Montgomery County Juvenile Court which determined that John C. Jones was the natural father of the minor child, Walker Dancy Chenoweth.
On December 20, 1996, Krystal Chenoweth and her minor child, Walker Dancy, filed a paternity complaint in the Montgomery County Juvenile Court. Krystal Chenoweth stated in the complaint that Walker was born on January 29, 1991 and that the defendant John C. Jones was the natural father of Walker. Bruce Chenoweth was named as a defendant as he was the presumed father of the child pursuant to the provisions of R.C. 3111.03(A), to wit, the child was born during her marriage to Bruce Chenoweth.
Jones filed an answer admitting paternity of Walker Chenoweth. Bruce Chenoweth filed an answer denying the allegations of the complaint and further asserting certain the affirmative defenses of laches and estoppel.
On January 2, 1997, the magistrate recommended that the defendant submit to genetic blood testing. Defendant Chenoweth filed objections to such testing on the basis that such testing would not be in the best interest of the child. The trial court adopted the magistrate's recommendation that genetic testing be conducted. On April 15, 1997, the magistrate set a trial date for May 8, 1997. The defendant Chenoweth was served at his place of incarceration in Nelsonville, Ohio.
On May 7, 1997, Chenoweth sought a continuance from the trial court of the trial date to secure counsel and have the trial court appoint a guardian ad litem for the minor child. The magistrate overruled the motion.
At the conclusion of the hearing the magistrate made the following decision:
 1. It is established by a preponderance of the evidence that the defendant, John C. Jones, is the father of Walker Dancy Chenoweth, born on January 29, 1991. Attached hereto and made a part hereof is Exhibit 1, which indicates a 99.96% probability that John Jones is the father of the subject child. Attached hereto and made a part hereof as Exhibit 2 is an admission by John Jones that he is the father of the subject child. The evidence indicates that the plaintiff was separated from Bruce E. Chenoweth, her husband, and living with John Jones when the child was conceived. Therefore, Bruce Chenoweth is dismissed with prejudice as a defendant in this matter. All of his pretrial motions are likewise dismissed with prejudice.
Defendant Chenoweth objected to the magistrate's report and requested findings of fact and conclusions of law. The magistrate then made the following findings and conclusions of law:
 Bruce E. Chenoweth and the Plaintiff were married in 1987 and the Plaintiff moved in with John C. Jones in March, 1990, and they remained together until July, 1990. On May 8, 1990, while the Plaintiff was living with John C. Jones, the subject child was conceived. Until that point, the Plaintiff last had sex with Bruce E. Chenoweth in January, 1990, four months prior to conception. At the time, Krystal C. Chenoweth and John Jones were living together and enjoying an active sex life. Ms. Chenoweth was only having sex with John C. Jones and was not using any contraceptives or contraceptive devices.
 In July, 1990, Ms. Chenoweth reconciled her marriage with Bruce Chenoweth. At the time she was two months pregnant and showing. She told Mr. Chenoweth she was pregnant which he chose to ignore. On January 29, 1991, the subject child was born in Miami Valley Hospital. Bruce E. Chenoweth was at the hospital when the child was born and signed the child's birth certificate. The Plaintiff, minor child, and Bruce E. Chenoweth lived together until November, 1994, when he was incarcerated for aggravated drug trafficking and mail fraud. He is to be released in the year 2000.
 In early 1995, Ms. Chenoweth resumed her relationship with John C. Jones. According to her testimony, the minor child's baby picture is identical to that of Mr. Jones and the threesome functions as a family. Mr. Jones keeps the child when Ms. Chenoweth works evenings and he visits with the child every weekend. The parties submitted to genetic testing which indicates a 99.96% probability that Mr. Jones is the father of the child.
 The Plaintiff testified that Bruce Chenoweth was involved in three other marriages without bearing any children. She stated that the doctors have advised him that he is unable to produce a child.
 Based on these facts, John C. Jones was found to be the father of Walker Dancy Chenoweth and the child's name was changed to Walker Dancy Jones.
 CONCLUSIONS OF LAW The Defendant filed a motion for continuance in order that legal counsel might be obtained. The case was filed on December 20, 1996. Mr. Chenoweth is in jail until 2000 and had ample time to secure legal counsel. The continuance was, therefore, denied. The granting of a continuance is in the sound discretion of the trier of facts.
 The Defendant requested that a Guardian ad Litem be appointed for the child. The child's interest was not adverse to any of the parties. Therefore, no such appointment was made.
 The Defendant filed a motion in opposition to genetic testing. Section 3111.09 of the Ohio Revised Code grants the Court the authority to order genetic testing in a paternity action. As a matter of fact, Bruce Chenoweth was ordered to submit to genetic testing on three occasions and he failed to cooperate each time. This motion was denied.
 Ohio Revised Code Section 3111.02 allows the Court to establish the paternity of the child. However, Ohio Revised Code 3111.03 requires Mr. Chenoweth to be considered a presumed father since the subject child was conceived and born during his marriage to Ms. Chenoweth. Section 3111.03(6) allows the presumption to be overcome by a genetic test which indicates a "probability of paternity of ninety-five percent or greater that the man is the biological father of the child." In the case at bar, there is a DNA probability of paternity of 99.96%.
The trial court adopted the magistrate's decision. This appeal followed.
The appellant has filed five assignments of error. In the first he contends the trial court erred in denying his continuance motion.
In State v. Sowders (1983), 4 Ohio St.3d 143,144 4 OBR 386, 387-388, 447 N.E.2d 118, 120, the Supreme Court noted that the grant or denial of a motion for a continuance is a matter within the sound discretion of the trial judge. Judicial discretion, the court further observed, is "the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in light of the particular circumstances of the case." (Citation omitted.)
Moreover, the Sowders court endorsed the use of a balancing test which requires the trial court to weigh the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice, against the potential prejudice to the movant.
We cannot say the trial court abused its discretion in denying the continuance motion. The motion was made on the eve of trial and the defendant had four months to secure counsel to represent his interests. The first assignment of error is overruled. In his second assignment of error, appellant contends the trial court erred in not appointing a guardian ad litem for Walker Chenoweth. Appellant argues that the child's interests were distinct from his mother's in that the result of the paternity eliminated him as a legitimate heir of him and eliminated him from the life of the only father he has known from birth.
John Jones testified he had no contact with Walker Chenoweth until late 1995. (Tr. 29). Krystal Chenoweth testified she intends to divorce the appellant. She further testified that Jones presently spends every weekend with Walker.
It may be that it was in the best interest of Walker Chenoweth that this paternity action proceed more than six years after his birth. We are, however, not convinced that his interests were synonymous with his mother's. Accordingly, we think it appropriate to sustain this assignment in part and remand this matter to the trial court for the appointment of a guardian ad litem for Walker Chenoweth. The guardian may then determine it is in the best interests of Walker to reopen this paternity proceeding.
In his third assignment, appellant contends the trial court erred in admitting the results of the genetic testing without the presentation of expert testimony. The record discloses the trial court considered a Paternity Evaluation Laboratory Report provided by Gene Screen in which Cheryl Conley Ph.D. Laboratory Director stated in a notarized sworn statement that she had personal knowledge of the report and the testing was conducted in accord with Gene Screen's standard protocol and the conclusions of the report were correct.
As appellant did not appear nor did counsel on his behalf, the report was admitted without objection. This assignment is overruled.
In his fourth assignment of error, appellant contends the trial court erred in showing partiality to the plaintiff and her counsel. We have examined the record and find no evidence the magistrate displayed any lack of impartiality in the manner of conducting the hearing. This assignment of error is overruled.
In his last assignment, he contends the trial court erred in granting the changing of paternity of the minor child from that of a legitimate child to that of bastard child.
In Hulett v. Hulett (1989), 45 Ohio St.3d 288, the Ohio Supreme Court held that pursuant to R.C. 3111.03(A)(1) a man is presumed to be the natural father of a child where the man and the child's mother are or have been married to each other and the child is born during the marriage. However, such presumption may be rebutted by clear and convincing evidence to the contrary. The Court held that evidence may include genetic test results. Justice Sweeney noted the following at pages 294 and 295 of the Court's opinion:
 In any event, courts retain the equitable authority to bar such actions where the party instituting suit has failed to expeditiously assert the right to challenge the presumption of paternity and such dilatory behavior results in prejudice to the defendant. This authority exits even when the statute of limitations for bringing the action has not expired. Thus, in the syllabus to Wright v. Oliver (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, we observed:
 "Laches may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice. (Smith v. Smith [1959], 168 Ohio St. 447, 7 O.O. 2d 276, 156 N.E.2d 113; Thirty-Four Corp. V. Sixty-Seven Corp.
[1984], 15 Ohio St.3d 350, 15 OBR 472, 474 N.E.2d 295; Connin v. Bailey [1984], 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328; Kinney v. Mathias [1984], 10 Ohio St.3d 72, 10 OBR 361, 461 N.E.2d 901, followed.)"
In his dissent, Justice Brown noted that the Uniform Parentage Act and a majority of states place a time limit upon when persons (other than the child) may bring an action to determine paternity when there is a presumed father by reason of his marriage to the mother. The UPA allows such an action to be brought in no event later five years after the child's birth. Uniform Parentage Act (1973) Section 6(a)(2).
R.C. 3111.05 provides that a paternity action may not be brought later than five years after the child reaches the age of eighteen.
In Wright v. Oliver, supra, the Ohio Supreme Court noted that Oliver could not claim his case had been so materially prejudiced by the passage of time as to require dismissal of the action of laches when he has available to him highly reliable, accurate and accepted scientific tests that could exclude practically all men wrongfully accused of being the father of the child. The Oliver
court also noted that the defendant did not portray material prejudice because his unavailable witnesses were not material and his incurrence of obligations did not materially prejudice him.
The record in this case establishes that defendant Bruce Chenoweth would not cooperate in the genetic testing to determine the child's paternity. The record fails to demonstrate that the defendant actually provided sustenance for the child after he resumed living with his wife and before he was arrested. The defendant has also failed to demonstrate that material witnesses were unavailable because of the delay in the filing of the paternity action. The genetic testing in this case indicates a 99.96% probability that John Jones is the father of Walker Chenoweth.
The appellant has failed to demonstrate how he was materially prejudiced by the plaintiff's delay in filing the paternity action. The appellant's fifth assignment of error is overruled.
The judgment of the trial court is Affirmed in part and Reversed in part and this matter is Remanded to the trial court for further proceedings.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Thomas Glasper
Bruce Edward Chenoweth
Hon. Nick Kuntz